UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Vopak USA, Inc.

Civ. File No. 02-393 (PAM/RLE)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Hallett Dock Company,

Defendant.

---

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order.[1] Both parties were present at the hearing on this matter which was held on February 20, 2002. Based on that hearing and the record presented to the Court, the Court grants Plaintiff a preliminary injunction against Defendant.

**BACKGROUND**

Plaintiff Vopak USA, Inc. ("Vopak") is a chemical distribution company that does part of its business selling calcium chloride to counties and municipalities in Minnesota and parts of Wisconsin and North Dakota. Vopak purchases this chemical from Dow Chemical Company, which ships the product in 1.5 million gallon quantities by barge from Ludington, Michigan to Duluth, Minnesota. The chemical is then unloaded into a 2 million gallon holding tank owned by Defendant Hallett Dock Company ("Hallett") and leased to Vopak.

---

[1] Because both parties were given an opportunity to present arguments at the hearing in this matter, the Court will treat Plaintiff's Motion as one for a preliminary injunction.

FEB 22 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Vopak is currently bidding for contracts with counties and municipalities to provide calcium chloride for the coming summer. (See Wozniak Decl ¶ 21.) Because of the limited barge shipping period, the limited availability of barges, and the $250,000 penalty the shipper incurs if a reserved slot on a barge is not used, Dow Chemical Company requires Vopak's first 1.5 million gallon order by February 25, 2002. (See id. ¶ 20.)

The controversy in this case centers on the lease of Hallett's holding tank. In February 1993, Vopak and Hallett entered into the lease governing this tank. The original lease provided that the lease price for the tank was $1,800 per month and would not exceed this amount through March 31, 1996. (See Compl. Ex. A ¶ 3.) After March 31, 1996, the monthly lease price for the tank was subject to the negotiation of the parties. (See id.) The lease also provided that it was terminable with 90 days' written notice without cause or 30 days' written notice for cause. (See id. ¶ 2.)

Vopak contends that the lease was substantially modified in January 1999, by a letter from Hallett to Vopak. (See Compl. Ex. B (Jan. 29, 1999 letter from William W. McGiffert to Dave Bohrer).) According to Vopak, this letter increased the monthly lease charges by $1,200 per month and provided that "[t]he monthly lease will be firm for five (5) years." (Id.) This increase represented the cost of replacing the tank liner. (See id.)

Vopak alleges that it has paid this increased lease charge since January 1999. On January 25, 2002, Hallett provided 90 days' notice of cancellation of the lease agreement.

(See Compl. Ex. C.) Vopak contends that Hallett's purported cancellation would constitute a breach of the modified lease agreement and has brought the instant Motion to prevent such a breach.

**DISCUSSION**

A temporary restraining order or preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the movant will suffer irreparable harm absent the restraining order; and (4) that the public interest favors the movant. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is considered to be a "drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993).

Vopak argues that it is likely to succeed on the merits of its claims because the 1999 letter constitutes a modification of the lease, making the lease "firm" for a five-year period. Hallett argues that the original lease specifically provided that the lease charge could be renegotiated after March 31, 1996. According to Hallett, the 1999 letter was merely such a renegotiation and did not alter the termination provisions of the lease in any way.

Vopak persuasively responds by noting that at best the use of the word "firm" in the letter is ambiguous because it is unclear whether the term applies only to the lease charges or to the length of the lease. As Vopak goes on to point out, ambiguities in a document are to be construed strictly against the drafter, in this case Hallett. See, e.g., General Mills, Inc.

v. Gold Medal Ins. Co., 622 N.W.2d 147, 151 (Minn. Ct. App. 2001). Accordingly, the Court agrees that at this stage of the litigation it appears likely that Vopak can successfully show that Hallett may not terminate the lease until the five-year period has lapsed.

The Court also agrees that Vopak will suffer irreparable harm if the injunction is not granted and that the balance of harms in this case favors granting such an injunction. Because Vopak is currently bidding on contracts to provide calcium chloride to counties and municipalities for this upcoming summer, Vopak contends that it needs a large storage facility not only for holding the chemical itself, but also for mixing and downgrading the concentration of the chemical. (Wozniak Decl. ¶ 11, 13.) Despite its efforts to secure alternate shipping and storage options, however, Vopak claims that it needs the Hallett storage tank to carry on its business. (See id. ¶ 23-24.) Without this tank, Vopak argues that it will be forced to withdraw some of the bids that it has already placed, it will not be able to place future bids for this season, and it will lose its goodwill as a result. (See id. ¶ 25.)

This irreparable harm can be avoided if an injunction is granted. Hallett, on the other hand, will not suffer any irreparable harm if the injunction is granted because it will continue to receive its monthly lease charges from Vopak.

Finally, public policy favors the enforcement of valid contracts and the protection of business interests. Because it is likely that Vopak can successfully show that Hallett is bound by the terms of the lease as modified by the 1999 letter, this factor favors Vopak.

## CONCLUSION

The Court is aware that both parties have business exigencies that demand swift resolution to this dispute. Accordingly, the Court encourages the parties to attempt to settle this matter as soon as possible, whether through informal means or through the offices of the Magistrate Judge.

For the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion (Clerk Doc. No. 2) is **GRANTED** as follows:

1. Contingent upon timely payment of the requisite lease charges by Plaintiff, Defendant Hallett Dock Company, 37th Avenue West & St. Louis Bay, P.O. Box 16447, Duluth, MN 55816-0447, and all individuals, corporations or entities in active concert or participation with Hallett, are hereby enjoined from directly or indirectly refusing to allow Vopak to store calcium chloride at, and from refusing to allow Vopak to ship calcium chloride to and from, Hallett Dock #6, 59th Avenue West and St. Louis Bay, Duluth, Minnesota 55807 for sixty (60) days following the date of this Order;
2. Contingent upon timely payment of the requisite lease charges by Plaintiff, Hallett and all individuals, corporations or entities in active concert or participation with Hallett, are hearby enjoined from directly or indirectly refusing to provide handling services for calcium chloride stored and to be

stored at the above mentioned Hallett facility for sixty (60) days following the date of this Order.

3. Pursuant to Fed. R. Civ. P. 65, within ten days from the date of this Order, Plaintiff shall post a bond in the amount of $5,000 to secure this Preliminary Injunction. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

Dated: February 22, 2002

Paul A. Magnuson
United States District Court Judge