UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Vopak USA, Inc. Civ. File No. 02-393 (PAM/RLE)

Plaintiff,

v. **MEMORANDUM AND ORDER**

Hallett Dock Company,

Defendant.

---

This case arises from a dispute over the lease of a bulk storage tank in Duluth, Minnesota. Defendant purported to terminate the lease of this tank with 90 days' notice. Plaintiff contends that, pursuant to a modification of the lease agreement, the lease of this storage tank could not be terminated for a five-year period. Although Defendant concedes that the lease was modified, it argues that the modification is ambiguous and that the Court should consider extrinsic evidence to clarify the meaning of the modification. This matter is before the Court on cross-Motions for Summary Judgment. For the following reasons, the Court grants Defendant's Motion in part and denies it in part[1] and denies Plaintiff's Motion.

[1] Because both parties agree that a contract exists, and because neither party has addressed Counts III or V of the Complaint, alleging promissory estoppel and unjust enrichment respectively, these Counts are dismissed. See United States Fire Ins. Co. v. Minnesota State Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1981) (stating that equitable relief based on unjust enrichment will be denied if the rights of the parties are governed by a valid contract); Gorham v. Benson Optical, 539 N.W.2d 798, 801 (Minn. Ct. App. 1995) (noting that promissory estoppel applies only where a contract does not exist).

APR 26 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

**BACKGROUND**

Plaintiff Vopak USA, Inc. ("Vopak")[2] is a chemical distribution company that does part of its business selling calcium chloride to counties and municipalities in Minnesota and parts of Wisconsin and North Dakota. Vopak purchases this chemical from Dow Chemical Company, which ships the product in 1.5 million gallon quantities by barge from Ludington, Michigan to Duluth, Minnesota. At that point, the chemical is unloaded into a 3 million gallon holding tank owned by Defendant Hallett Dock Company ("Hallett") and leased to Vopak.

Vopak and Hallett have had an on-going business relationship for approximately twenty-four years. In that time, the parties have negotiated at least three lease agreements governing Vopak's use of this holding tank. All of these leases have provided that either party could terminate the lease with 90 days' written notice. (See McGiffert Aff. Exs. A at ¶ 2, C at ¶ 2, D at ¶ 2.) Additionally, leases in both 1989 and 1993 provided that the lease rate would remain fixed for three years. (See id. Exs. C at ¶ 3, D at ¶3.)

In February 1993, Vopak and Hallett entered into the most current lease agreement for the tank.[3] The 1993 lease stated that the lease price for the tank was $1,800 per month and would not exceed this amount through March 31, 1996. (See id. Ex. D at ¶ 3.) The

[2] Vopak was formerly known as Van Waters & Rogers, Inc. For the purposes of this Order, "Vopak" will be used to refer to both Vopak and Van Waters & Rogers, Inc.

[3] The parties have not affirmatively addressed what law applies to the lease agreement; however, because both parties cite only Minnesota law in their briefs, the Court will assume for the purposes of these cross-Motions that Minnesota law governs the lease agreement.

1993 lease also provided that it was terminable by either party with 90 days' written notice without cause or 30 days' written notice for cause. (See id. at ¶ 2.) This lease was substantially modified in January 1999, by a letter from Hallett to Vopak. (See Compl. Ex. B (Jan. 29, 1999 letter from William W. McGiffert to David Bohrer).) The letter stated that "[t]he monthly lease will be firm for five (5) years and increased from $1800 to $3000." (Id.)

Hallett notes that the 1999 letter arose from conversations between William McGiffert, Hallett's Vice President of Operations, and David Bohrer, an account executive and product manager for Vopak. Hallett argues that the focus of the negotiations between McGiffert and Bohrer was the rate for certain handling services and the monthly lease rate. According to Hallett, McGiffert and Bohrer never discussed or negotiated for a fixed term for the lease and never discussed waiving their rights to cancel under the 90-day termination provision of the 1993 lease agreement. Additionally, Bohrer has testified that he understood the 1999 letter to mean that only the lease rate was fixed for five years. (See Bohrer Dep. at 25-26.)

On January 25, 2002, Hallett provided 90 days' written notice of cancellation of the lease agreement. (See Compl. Ex. C (Jan. 25, 2002 letter from Jeremy M. Fryberger to Don Wozniak).) Hallett has leased the tank to a third party. Vopak filed this suit on February 19, 2002, essentially alleging that Hallett breached the lease agreement.

The outcome of this case hinges on the interpretation of the sentence "[t]he monthly lease will be firm for five (5) years and increased from $1800 to $3000" in the 1999 letter.

Both parties seek summary judgment. The sine qua non of Hallett's Motion is that the 1999 letter, and in particular its use of the word "firm," is ambiguous. Accordingly, Hallett claims that the Court must consider extrinsic evidence, such as the parties' prior course of dealing and the negotiations between McGiffert and Borher, to ascertain the intent of the parties. Hallett argues that the extrinsic evidence in this case is undisputed and, as a matter of law, establishes that the 1999 letter was merely intended to raise the lease rate for the tank but left the 90-day cancellation provision of the 1993 lease intact.

Vopak argues that the plain and unambiguous terms of the 1993 lease, as modified by the 1999 letter, rendered the lease non-terminable for a five-year period. Accordingly, Vopak has filed a cross-Motion for Summary Judgment. Vopak also contends that summary judgment in its favor is appropriate because even if the 1999 letter was ambiguous, such ambiguity should be construed against the drafter, Hallett in this case, and the Court should construe any ambiguities that exist so as to avoid an unjust or absurd result.

Alternatively, Vopak claims that even if the Court were to determine that the 1999 letter was ambiguous but did not construe such ambiguity against Hallett, Hallett's Motion should be denied because any ambiguity in the 1999 letter would create genuine issues of material fact to resolve. Specifically, Vopak argues that the mere fact that McGiffert and Bohrer did not discuss the 90-day termination provision nor discuss fixing the lease term fails to establish, as a matter of law, that the parties intended to leave the 90-day termination provision intact. Additionally, Vopak challenges the veracity of Bohrer's testimony, noting

that Bohrer is now employed by the new lessee of the Hallett tank and that Vopak has filed a separate suit against Bohrer related to the alleged destruction of certain documents and the illicit sharing of Vopak's confidential information with Vopak's competitors. Finally, Vopak claims that Bohrer's co-employees have testified that Bohrer assured them that Vopak would have the tank for five years. (See Minehart 2d. Decl. ¶ 3; Biondo 2d. Decl. ¶ 3; Wozniak 3d. Decl. ¶ 3.)

**DISCUSSION**

**A. Summary Judgment Standard**

Rule 56(c) provides that a motion for summary judgment shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996)

If the moving party has carried its burden, the non-moving party must demonstrate the

existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., 475 U.S. at 586.

**B. Merits**

Although contract interpretation is one of the most intractable tasks which a court faces, Minnesota courts have forged several fundamental rules to assist them. The axiomatic starting point in construing a contract is that courts should ascertain and give effect to the parties' intentions at the time of contracting. See Metro. Sports Facilities Comm'n v. Gen. Mills, Inc., 470 N.W.2d 118, 122-23 (Minn. 1991) (citing Karim v. Werner, 333 N.W.2d 877, 879 (Minn. 1983)). Normally, of course, the parties' intention is expressed by the language used in the contract. See Carl Bolander & Sons, Inc. v. United Stockyards Corp., 215 N.W.2d 473, 476 (Minn. 1974). "[A]n agreement should be upheld where, despite some incompleteness and imperfection of expression, the court can reasonably find the parties' intent by applying the words as the parties must have understood them." Triple B&G, Inc. v. Fairmont, 494 N.W.2d 49, 53 (Minn. Ct. App. 1992). In determining what the parties must have understood, courts assign the words used in the contract their ordinary, popular meaning, unless it is clear that the parties intended to assign the words a different meaning.

See Turner v. Alpha Phi Sorority House, 276 N.W.2d 63, 67 (Minn. 1979). Furthermore, courts construe words and phrases in the context of the entire contract, harmonizing to the extent possible all of the contract's terms. See Country Club Oil Co. v. Lee, 58 N.W.2d 247, 249 (Minn. 1953).

If a contract's language is reasonably susceptible to more than one interpretation, however, the contract is ambiguous. Modern Heating & Air Conditioning, Inc. v. Loop Belden Porter, 493 N.W.2d 296, 301 (Minn. Ct. App. 1992). It is important to note that in Minnesota, at least, this ambiguity need not appear on the face of the contract, but may be realized when attempting to "operate" or give effect to the contract. Telex Corp. v. Balch, 382 F.2d 211, 217 (8th Cir. 1967) (quoting City of Marshall v. Gregoire, 259 N.W. 377, 381-82 (Minn. 1935) (stating that "[frequently] ambiguity appears when attempt is made to operate the contract")). Determining whether a contract is ambiguous is a question of law for the Court. Blattner v. Forster, 322 N.W.2d 319, 321 (Minn. 1982); Turner, 276 N.W.2d at 66. When a contract is ambiguous, courts may look beyond the wording of the contract to discover the intent of the parties. See Blattner, 322 N.W.2d at 321 (stating that "[i]f . . . an ambiguity exists . . . courts may resort to extrinsic evidence of intent to construe the contract"); Telex Corp. v. Data Prods. Corp., 135 N.W.2d 681, 686-87 (Minn. 1965).

In this case, although Hallett's reasoning is flawed, the Court agrees that the 1999

letter is ambiguous.[4] The sentence "[t]he monthly lease will be firm for five (5) years and increased from $1800 to $3000" is reasonably susceptible to more than one interpretation. The word "firm," in this sentence, serves as a subject complement to describe "lease." Although the parties focus much of their attention on the use of the word "firm," there is no real debate that the word "firm," as it is ordinarily and popularly used in this context, means "not subject to change or revision." Merriam-Webster's Collegiate Dictionary 438 (Frederick C. Mish et al. eds., 10th ed. 1995). There is also no real debate that the word "lease," functioning as the subject of the sentence, means "[a] contract by which a rightful possessor of real property conveys the right to use and occupy that property in exchange for consideration." Black's Law Dictionary 898 (7th ed. 1999). The controversy in the case centers on whether the word "rate" or "rent" must be read into the sentence following the word "lease" to give meaning to the entire sentence.

Vopak urges the Court to read the sentence as it is written and not add words.

---

[4] Hallett first argues that the Court has already determined that the terms of the 1999 letter are ambiguous. To reach this conclusion, Hallett misquotes the language of the Court's February 22, 2002, Memorandum and Order granting Vopak a preliminary injunction. In that Order, the Court merely stated that "at best the use of the word 'firm' in the letter is ambiguous." Id. at 3 (emphasis added). Although it should go without saying, the Court did not rule in its preliminary injunction Order that the terms of the 1999 letter are ambiguous.

Hallett's other arguments essentially distill to the claim that the 1999 letter's terms are rendered ambiguous when the letter is placed in the context of the parties' past practices and negotiations. As Vopak points out, however, courts do not generally consider extrinsic evidence when determining whether a particular contract term is ambiguous. Blattner, 322 N.W.2d at 321. The test for ambiguity is whether the contract's language is reasonably susceptible to more than one interpretation.

According to Vopak, the fact that the subject of the sentence is "lease" rather than "lease rate" or "lease rent" is dispositive. Relying on perhaps the most ingrained rule of contract interpretation, Vopak argues that it is not the province of the Court to rewrite the parties' contract. Looking only at the first clause of the sentence, Vopak's argument is compelling. However, the second dependant clause of the sentence seems to demand that the Court add the word "rate" or "rent" after "lease." To derive meaning from the second clause, the Court must borrow the subject (and helping verb) from the first clause. The result is that the second clause reads "the monthly lease will be increased from $1800 to $3000." Given that the term "lease," standing alone, refers to the agreement or contract itself, for which there is generally no monthly charge, a prudent and reasonable interpretation of the second clause is that the "monthly lease rate" is being increased. This interpretation is further supported by the fact that in the 1993 lease, the "lease price" or "monthly rental rate" for the tank is $1,800. (McGiffert Aff. Ex. D at ¶ 3(a).) Without looking outside of the lease documents, it is reasonable to find that the $1,800 charge discussed in the 1999 letter is the same as the $1,800 monthly rental rate imposed by the 1993 lease.

In short, at least two, and perhaps more, reasonable meanings can be garnered from the sentence "[t]he monthly lease will be firm for five (5) years and increased from $1800 to $3000." Accordingly, the Court finds that the 1999 letter is ambiguous. Having made that determination, however, Vopak still maintains that summary judgment in its favor is warranted.

Vopak first argues that any ambiguities in the 1999 letter should be construed strictly against Hallett. See, e.g., Gen. Mills, Inc. v. Gold Medal Ins. Co., 622 N.W.2d 147, 151 (Minn. Ct. App. 2001); Cherne Indus., Inc. v. Grounds & Assocs., Inc., 278 N.W.2d 81, 89 (Minn. 1979). Vopak's reliance on this rule is misplaced. The doctrine of contra proferentem (literally meaning "against the offeror"), is generally applied by courts only when other rules of interpretation fail to elucidate the contract's meaning. See 11 Richard A. Lord, Williston on Contracts § 32:12 (Jack K. Levin ed., 4th ed. 1999); Thompson v. Amoco Oil Co., 903 F.2d 1118, 1121 n.3 (7th Cir. 1990). Additionally, the doctrine is primarily applied to contracts of adhesion or insurance contracts where the parties do not have equal negotiating power. See, e.g., Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 692 (8th Cir. 1997) (declining to apply the rule because of the parties' relatively equal bargaining strength); Indianhead Truck Line v. Hvidsten Transp., Inc., 128 N.W.2d 334, 342 (Minn. 1964) (noting that when an agreement is drafted cooperatively, the rule may not apply).

In this case, the parties are sophisticated business entities that have essentially the same bargaining power. Additionally, the parties extensively negotiated the 1999 letter. Accordingly, the Court will not apply the doctrine of contra proferentem at this stage of the litigation. Both parties shall be afforded adequate opportunity to present evidence establishing their intent at the time of contracting.

Vopak's remaining argument is that construing the 1999 letter as ambiguous

necessarily means that there is the reasonably possibility that the phrase "[t]he monthly lease will be firm for 5 (five) years" means that only the monthly lease rate will be firm. Such a reading, Vopak contends, would be absurd or unjust because it would render the promise that the lease rate would be firm illusory. If the 90-day termination provision remained intact, Vopak claims, then Hallett could conceivably terminate the lease at any point before the end of the five-year period and negotiate for a higher lease rate. The argument that this purported absurdity or injustice means that the Court should construe any ambiguity against Hallett as a matter of law, however, is disingenuous. All three of the leases between the parties fixed the lease price for a period of time but also provided that the lease was terminable with 90 days' notice by either party. Although there is admittedly some contradiction between a provision fixing the lease price and a provision allowing either party to terminate the lease with 90 days' notice, this is exactly the bargain that the parties struck for more than 20 years. Vopak cannot claim now that such an agreement is per se unjust or absurd.

Having found that the 1999 letter is ambiguous, and having determined that these ambiguities should not, at this stage in the litigation, be construed against Hallett, the Court must ascertain the meaning of the 1999 letter in the same manner as it would determine any other question of fact. See Telex Corp., 382 F.2d at 218. This is exactly what Hallett proposes that the Court do by looking at extrinsic evidence of the parties' prior course of dealing and the negotiations surrounding the 1999 letter. Hallett goes too far, however, when it argues that this extrinsic evidence is undisputed and that no genuine issues of material fact

about this evidence remain for trial.

Vopak disputes not only the meaning but also the validity of this extrinsic evidence. First, Vopak correctly points out that the fact that McGiffert and Bohrer failed to discuss explicitly fixing the term of the lease or abrogating the 1993 lease agreement's 90-day termination provision does not necessarily mean that the parties intended to let the 90-day termination provision remain intact. Vopak also challenges the credibility of Bohrer's claims about the 1999 letter by introducing the declarations of three of Bohrer's co-workers who have testified that Bohrer told them that the lease was secure for five years. Vopak is correct in asserting that these disputes raise genuine issues of material fact that are not amenable to resolution on summary judgment.

**CONCLUSION**

The Court finds that, as a matter of law, the 1999 letter modifying the 1993 lease agreement at issue is ambiguous. The Court declines, at this stage of the litigation, to resolve this ambiguity against Hallett. Accordingly, the Court denies Vopak's cross-Motion for Summary Judgment. The Court also finds, however, that there are genuine issues of material fact regarding the extrinsic evidence of the parties' intent at the time of contracting. Accordingly, the Court denies in part Hallett's Motion for Summary judgment.

As the Court has noted at various stages of this litigation, it is obvious that both parties have business exigencies that demand a swift resolution to this dispute. The Court, therefore, continues to encourage the parties to attempt to settle this matter as soon as

possible. Failing a settlement, the Court proposes that the parties consider the expedited trial process for this case.

For the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant's Motion for Summary Judgment (Clerk Doc. No. 18) is **GRANTED in part and DENIED in part** as follows:

   a. Counts III and V of the Complaint are **DISMISSED**;

   b. Counts I, II, and IV may proceed to trial; and

2. Plaintiff's Motion for Summary Judgment (Clerk Doc. No. 22) is **DENIED**.

Dated: April 26, 2002

Paul A. Magnuson
United States District Court Judge